# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL LOPEZ, | CASE NO. 1:07-CV-00808-LJO-DLB PC |
| Plaintiff, | FINDINGS AND RECOMMENDATION RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED |
| v. | |
| DERRAL G. ADAMS, et al., | |
| Defendants. | (DOC. 44) |
| _____/ | OBJECTIONS DUE WITHIN TWENTY-ONE (21) DAYS |

**Findings and Recommendation**

**I.    Procedural History**

Plaintiff Rafael Lopez ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR").  Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on Plaintiff's complaint against Defendant Masiel, Flowerdew, and Davis for violation of the Eighth Amendment.  On June 14, 2010, Defendants filed a motion for summary judgment. Defs.' Mot. Summ. J., Doc. 44.  On December 21, 2010, Plaintiff filed his opposition.  Pl.'s Opp'n, Doc. 50.[1]  On December 23, 2010, Defendants filed their reply.  Defs.' Reply, Doc. 51. The matter is submitted pursuant to Local Rule 230(l).

---

[1] Plaintiff was informed of the requirements for opposing a motion for summary judgment by a Court order on April 14, 2008.  Doc. 19, Second Informational Order; *see Klingele v. Eikenberry*, 849 F.2d 409, 411 (9th Cir. 1988).

On December 8, 2010, the Court ordered Plaintiff to file an opposition to Defendants' motion for summary judgment.  Doc. 49.  Plaintiff's opposition is considered timely for purposes of this motion.

1  **II.**   **Summary Judgment Standard**

2    Summary judgment is appropriate when it is demonstrated that there exists no genuine

3  issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

4  Fed. R. Civ. P. 56(a).[2]   Under summary judgment practice, the moving party

5    always bears the initial responsibility of informing the district court of the basis
  for its motion, and identifying those portions of "the pleadings, depositions,

6    answers to interrogatories, and admissions on file, together with the affidavits, if
  any," which it believes demonstrate the absence of a genuine issue of material

7    fact.

8  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the

9  burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

10  in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on

11  file.'"  *Id.* at 324.  Indeed, summary judgment should be entered, after adequate time for

12  discovery and upon motion, against a party who fails to make a showing sufficient to establish

13  the existence of an element essential to that party's case, and on which that party will bear the

14  burden of proof at trial.  *Id.* at 322. "[A] complete failure of proof concerning an essential

15  element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.*  In

16  such a circumstance, summary judgment should be granted, "so long as whatever is before the

17  district court demonstrates that the standard for entry of summary judgment, as set forth in Rule

18  56(c), is satisfied."  *Id.* at 323.

19    If the moving party meets its initial responsibility, the burden then shifts to the opposing

20  party to establish that a genuine issue as to any material fact actually does exist.  *Matsushita Elec.*

21  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

22    In attempting to establish the existence of this factual dispute, the opposing party may not

23  rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the

24  form of affidavits, and/or admissible discovery material, in support of its contention that the

25  dispute exists.  Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11.  The opposing party must

26  demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

27

28    [2]  The Federal Rules of Civil Procedure were updated effective December 1, 2010.

1   suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Thrifty*

2   *Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002); *T.W. Elec.*

3   *Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the

4   dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

5   nonmoving party, *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Wool v.*

6   *Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

7          In the endeavor to establish the existence of a factual dispute, the opposing party need not

8   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

9   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

10  trial."   *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

11  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

12  *Matsushita*, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963

13  amendments).

14         In resolving a motion for summary judgment, the court examines the pleadings,

15  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

16  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, *Anderson*, 477

17  U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

18  court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United*

19  *States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).  Nevertheless, inferences are not

20  drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from

21  which an inference may be drawn.  *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-

22  45 (E. D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

23         Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

24  show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as

25  a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

26  issue for trial.'"   *Matsushita*, 475 U.S. at 586-87 (citations omitted).

27  ///

28  ///

3

1  **III.**    **Undisputed Facts**[3]

2      During all times relevant to this action in September of 2005, Plaintiff was incarcerated

3  at the California Substance Abuse and Treatment Facility (SATF).  Defendant Davis was a

4  Sergeant at SATF in September of 2005.  As a Sergeant, Defendant Davis's work responsibilities

5  included, but were not limited to, supervising inmates, enforcing institutional policies and

6  procedures, supervising and training subordinate employees, and maintaining the safety and

7  security of inmates, staff, and the institution.  Defendants Masiel and Flowers were Correctional

8  Officers at SATF in September of 2005.  As Correctional Officers, Defendants Masiel and

9  Flowerdew's work responsibilities included, but were not limited to, supervising inmates,

10 enforcing institutional policies and procedures, and maintaining the safety and security of

11 inmates, staff, and the institution.

12      On May 4, 2005, a Memorandum from then-SATF Warden D. Adams was issued

13 regarding the double cell housing policy and Management Cell Status.  Based on the May 4,

14 2005 Memorandum, Defendants Masiel, Flowerdew and Davis understood that it was CDCR

15 policy for inmates to be double-celled and accept housing assignments as directed by staff, unless

16 the Institutional Classification Committee (ICC) determined that the inmate qualified for

17 single-cell status.

18      Defendants Masiel, Flowerdew and Davis believed that, based on the May 4, 2005

19 Memorandum, if an inmate refused to be double-celled, custodial staff was to immediately place

20 the inmate on walk-alone yard and Management Cell Status.

21      The May 4, 2005 Memorandum was in effect at SATF in September, 2005.  Defendants

22 _____

23      [3] All facts are taken from Defendant's statement of undisputed facts and are considered undisputed, unless
   otherwise noted.  Pursuant to Local Rule 260(b) and Federal Rule of Civil Procedure 56(c), all disputes with the
24 movant's statement of facts must be supported with citation to evidence.  *See* L. R. 260(b) (parties opposing
   Statement of Undisputed Facts shall deny those that are disputed, "including with each denial a citation to the
25 particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied
   upon in support of that denial").  Plaintiff's opposition did not comply with Local Rule 260(b), though it is verified
26 under penalty of perjury.  Plaintiff's verified opposition may be treated as an opposing affidavit to the extent that it is
   verified and sets forth admissible facts (1) within Plaintiff's personal knowledge and not based merely on Plaintiff's
27 belief and (2) to which Plaintiff is competent to testify.  *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004); *Johnson
   v. Meltzer*, 134 F.3d 1393, 1399-1400 (9th Cir. 1998); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987);
28 *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985).  The Court will consider only those facts and evidence that
   are relevant to resolving Defendants' motion for summary judgment.

1   Masiel, Flowerdew and Davis further understood that the authority to place an inmate in a

2   Management Cell derives from the California Code of Regulations (CCR), Title 15, Section

3   3332(f), which states that an inmate who persists in unduly disruptive, destructive, or dangerous

4   behavior, and who will not heed or respond to orders and warnings to desist from such activity,

5   may be placed in a Management Cell on the order of the unit's administrator or watch

6   commander.

7          According to SATF policy in place during September of 2005, the Facility Captain

8   typically reviewed all Management Cell cases every 24 hours to determine whether the inmate

9   should remain on that status, and the inmate's information was forwarded to the Lieutenant and

10  ICC for evaluation of retention on Management Cell Status, and for the determination of other

11  disciplinary or classification procedures.

12         Prior to being placed on Management Cell Status, Plaintiff was housed in Administrative

13  Segregation ("ad-seg") at SATF for self-protection.[4]  On or around September 10, 2005, Sergeant

14  Davis ordered Plaintiff to move to another cell and be double-celled, based on the institution's

15  need to relieve crowding, as addressed in the May 4, 2005 Memorandum, but Plaintiff refused. [5]

16         As of September 10, 2005, when Plaintiff was asked to double-cell, to Defendants Davis,

17  Masiel and Flowerdew's knowledge, the ICC had not determined that Plaintiff qualified for

18  single-cell status.  Plaintiff had not been designated for single-cell status prior to September,

19  2005, and he had been double-celled at SATF at different times, without incident.  As a result of

20  Plaintiff refusing to double-cell, in accordance with the May 4, 2005 Memorandum, Defendant

21  Davis decided to place Plaintiff on Management Cell Status, and instructed Defendants

22

23         [4]  Plaintiff contends that he was in ad-seg for protection reasons.  Defendants had contended that Plaintiff
24  was in ad-seg for indecent exposure.  That is contradicted by Plaintiff's deposition.  *See* Doc. 47.  Plaintiff's
    objection is sustained, and the undisputed facts are modified accordingly.

25         [5]  Plaintiff contends that the reason he refused a cell mate was because the proposed cell mate was his
26  enemy.  Pl.'s Opp'n 2.  This is the first time such a claim was raised by Plaintiff.  Plaintiff made no mention of this in
    his complaint.  As this allegation was never raised in Plaintiff's complaint, it is not a claim before this Court, and the
    Court denies Plaintiff's objection.
27         Plaintiff also raises claims regarding denial of his mail and discrimination based on race.  Denial of one's
28  mail is not an Eighth Amendment violation.  As to the racial discrimination, this is the first instance in which
    Plaintiff raises it, and it is not a claim before the Court.

1  Flowerdew and Masiel to escort Plaintiff out of his cell so that the property in the cell could be

2  inventoried and removed in preparation for Management Cell Status.

3       Defendants Flowerdew and Masiel complied with Defendant Davis's instruction.

4  Defendants Flowerdew and Masiel's escort of Plaintiff from the cell to facilitate the inventory

5  and removal of cell property concluded their involvement with Plaintiff.  Defendant Davis's

6  decision to place Plaintiff on Management Cell Status and directing Defendants Flowerdew and

7  Masiel to escort Plaintiff from the cell concluded his involvement with Plaintiff.  While on

8  Management Status, Plaintiff was able to wear his underwear in the cell.[6]

9       While on Management Cell Status, Plaintiff was able to use the toilet and sink inside his

10  cell whenever he wanted.  While on Management Cell Status, Plaintiff was also able to shower at

11  least every three days.  Three meals were brought to Plaintiff's cell everyday while he was on

12  Management Cell Status.  In September 2005, Defendants contend that the weather in Corcoran,

13  California, where SATF is located, ranged from 55 to 90 degrees.  Plaintiff contends that the

14  temperature was in the thirties, having viewed a thermometer in the building.[7]  Plaintiff did not

15  have a thermometer in his cell.  Based on the usual custom and practice regarding provision of

16  supplies to inmates in Management Cell Status at SATF in September, 2005, an inmate who did

17  not commit any further violation was permitted to have one additional item each day, such as a

18  sheet, towel, t-shirt, socks, blanket, and shoes.  If the inmate committed another violation, such

19  as using a sheet or towel to cover up the window to his cell, SATF staff could remove all

20  property from the inmate's cell and reinitiate Management Cell Status.  Plaintiff does not

21  specifically allege that Defendants Masiel, Flowerdew, and Davis were personally responsible for

22  the alleged conditions of his cell after he was placed on Management Cell Status.

23       Plaintiff's mail from his family had been held for him while he was on Management Cell

24  Status, and it was released to him immediately after he was removed from Management Cell

25  _____

26  [6]Defendants contend that he would have been required to wear it based on his placement in Administrative
   Segregation for indecent exposure.  However, Plaintiff declares that he was in ad-seg for protection purposes.
27  Plaintiff's objection is sustained.  Defendants' statement of undisputed facts is modified accordingly.

28       [7]  Pl.'s Opp'n 5.

1  Status.  Plaintiff was able to send letters freely after he was released from Management

2  Cell Status.

3          Defendants Davis, Masiel, and Flowerdew did not interfere with Plaintiff's mail while he

4  was on Management Cell Status.   As a Correctional Sergeant, it was Defendant Davis's job

5  responsibility to order eligible inmates such as Plaintiff, to double-cell, and if an inmate refused,

6  to follow the May 4, 2005 Memorandum and place the inmate on Management Cell Status.  After

7  Plaintiff's initial placement on Management Cell Status, Defendant Davis had no authority

8  regarding any determination of Plaintiff's retention on Management Cell Status.  As a

9  Correctional Sergeant, and not a medical care professional, it was Defendant Davis's usual

10 custom and practice to seek assistance for an inmate if he complained of physical or mental

11 health issues.  Defendant Davis was not aware at any time during Plaintiff's retention on

12 Management Cell Status that he complained of any physical or mental health issues.

13         As Correctional Officers, and not medical care professionals, it was Defendants

14 Flowerdew and Masiel's usual custom and practice to seek assistance for an inmate if he

15 complained of physical or mental health issues.  Defendant Masiel and Flowers contend that they

16 were not aware at any time during Plaintiff's retention on Management Cell Status that he

17 complained of any physical or mental health issues.  Neither Defendant Flowerdew nor

18 Defendant Masiel made the determination to order Plaintiff to double cell.  Neither Defendant

19 Flowerdew nor Defendant Masiel made the determination for Plaintiff to be placed on

20 Management Cell Status.

21         Defendants Davis, Flowerdew, and Masiel had no authority regarding the retention of

22 Plaintiff on Management Cell Status.  Defendants Davis, Masiel, and Flowerdew believe that all

23 of their conduct and dealings with Plaintiff were lawful.  Even Plaintiff believes that Defendants

24 Davis, Masiel and Flowerdew were simply following the Warden's Memorandum in placing him

25 on Management Cell Status.

26         In June of 2006, the Director's Level Appeal Decision was issued on Plaintiff's

27 grievance regarding his placement on Management Cell Status.  SATF was ordered to rescind the

28 Memorandum dated May 4, 2005, and issue a New Memorandum addressing the need to

1   establish that the behavior of the inmate be unduly disruptive, destructive or dangerous before an

2   inmate is placed on Management Cell Status.  The amended Memorandum was also to address

3   the safeguards provided for inmates in California Code of Regulations, Title 15, § 3331, and

4   SATF was to amend the Operating Procedure (OP) #100, to link the denial of clothing and

5   bedding to specific behaviors, and use language that makes it clear that placement in a

6   Management Cell is intended to manage present behavior, but not to punish for previous

7   behavior.  Accordingly, per Modification Order Z-05-04-0120, OP #100 was amended to reflect

8   that inmates who become so disruptive as to endanger the safe operations of the unit or endanger

9   the safety of themselves or staff, may be placed on Management Status. Additionally, the

10  inmates' property, clothing and bedding provisions were also amended to protect the safety of

11  themselves and staff.

12  **IV.   Analysis**

13      **A.   Eighth Amendment**

14          To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison

15  conditions must involve "the wanton and unnecessary infliction of pain . . . ."  *Rhodes v.*

16  *Chapman*, 452 U.S. 337, 347 (1981).  Although prison conditions may be restrictive and harsh,

17  prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and

18  personal safety.  *Id.*; *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986); *Hoptowit v.*

19  *Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982).  Where a prisoner alleges injuries stemming from

20  unsafe conditions of confinement, prison officials may be held liable only if they acted with

21  "deliberate indifference to a substantial risk of serious harm."  *Frost v. Agnos*, 152 F.3d 1124,

22  1128 (9th Cir. 1998).

23          The deliberate indifference standard involves an objective and a subjective prong.  First,

24  the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." *Farmer v.*

25  *Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Second,

26  the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . .

27  . ."  *Id.* at 837.  Thus, a prison official may be held liable under the Eighth Amendment for

28  denying humane conditions of confinement only if he knows that inmates face a substantial risk

8

1    of harm and disregards that risk by failing to take reasonable measures to abate it. *Id.* at 837-45.

2    Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk,

3    or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. *Id.* at 844-45.

4    Mere negligence on the part of the prison official is not sufficient to establish liability, but rather,

5    the official's conduct must have been wanton. *Id.* at 835; *Frost*, 152 F.3d at 1128. "The Eighth

6    Amendment guarantees adequate heating." *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996)

7    (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)), *amended by* 135 F.3d 1318 (9th

8    Cir. 1998).

9          Here, Defendants contend that they are entitled to summary judgment because

10    Defendants' actions did not violate the Eighth Amendment. Defs.' Mem. P. & A. 9:16-10:12.

11    Defendants contend that Plaintiff does not allege they were responsible for the conditions in the

12    management cell. *Id.* at 9:24-10:2. If Defendants are contending that they were not alleged as

13    personally responsible for the temperature in the cell, they are correct. However, according to the

14    undisputed facts, Defendants are responsible for the removal of the linens, mattress, and clothing

15    from the cell.

16          Defendants further contend that they were not aware of any physical or mental health

17    issues in placing Plaintiff on Management cell status. *Id.* at 10:3-12. Plaintiff has presented

18    facts which dispute this contention, however. Plaintiff declares that the temperature in the cell

19    was approximately in the thirties.[8] Pl.'s Opp'n 5. Plaintiff contends he knew this because there

20    was a thermometer in the building. *Id.* Defendants contend that the temperature in Corcoran

21    during the month of September 2005 ranged from 55 to 90 degrees. However, it is unclear how

22    Defendants knew this. Construing the facts in the light most favorable to Plaintiff as the non-

23    moving, the Court finds that there is circumstantial evidence which indicates that Defendants

24    knew of and disregarded an excessive risk to Plaintiff's health. *Farmer*, 511 U.S. at 837. If the

25    temperature was in the thirties, then Defendants could have subjectively known this through first-

26    hand knowledge. Even if Defendants did not know the exact temperature, feelings of cold can be

27

28

---

[8] The Court presumes that Plaintiff and Defendants refers to degrees in Fahrenheit.

1  experienced through one's senses.  The removal of Plaintiff's linens, mattress, and clothing by

2  Defendants, and Plaintiff's declaration stating that the temperature was in the thirties while he

3  was on management cell status for thirteen days, is sufficient to demonstrate a triable issue of

4  material fact as to Plaintiff's condition of confinement claim.  The Court recommends that

5  Defendants' motion for summary judgment as to Plaintiff's Eighth Amendment claim regarding

6  conditions of confinement be denied.

7              **B.    Qualified Immunity**

8          Defendants contend that they should receive qualified immunity for their alleged actions.

9  Government officials enjoy qualified immunity from civil damages unless their conduct violates

10 "clearly established statutory or constitutional rights of which a reasonable person would have

11 known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In ruling upon the issue of qualified

12 immunity, one inquiry is whether, taken in the light most favorable to the party asserting the

13 injury, the facts alleged show the defendant's conduct violated a constitutional right.  *Saucier v.*

14 *Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v. Callahan*, 129 S. Ct. 808, 813

15 (2009) ("*Saucier* procedure should not be regarded as an inflexible requirement").  The other

16 inquiry is whether the right was clearly established.  *Saucier*, 533 U.S. at 201.  The inquiry "must

17 be undertaken in light of the specific context of the case, not as a broad general proposition . . . ."

18 *Id.*  "[T]he right the official is alleged to have violated must have been 'clearly established' in a

19 more particularized, and hence more relevant, sense:  The contours of the right must be

20 sufficiently clear that a reasonable official would understand that what he is doing violates that

21 right." *Id.* at 202 (citation omitted).  In resolving these issues, the court must view the evidence

22 in the light most favorable to plaintiff and resolve all material factual disputes in favor of

23 plaintiff.  *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).  Qualified immunity

24 protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v.*

25 *Briggs*, 475 U.S. 335, 341 (1986).

26         Defendants contend that they are entitled to qualified immunity because a constitutional

27 violation for following an authority's lawful order is not clearly established law.  This is an

28 incorrect categorization of the applicable law here.  As stated previously, the Eighth Amendment

1    requires adequate heating. *Keanan*, 83 F.3d at 1091. This has been clearly established,

2    applicable Ninth Circuit law since at least 1996. It would be unlawful to violate a prisoner's

3    Eighth Amendment rights, even if one was following orders.

4            The next inquiry is whether Defendants' conduct, taken in the light most favorable to

5    Plaintiff, shows a constitutional violation. Based on the verified opposition and the undisputed

6    facts, Plaintiff was placed on management cell status, which involved removing all of Plaintiff's

7    linens, clothing, and mattress from the cell. Plaintiff was left in a cell that was in a temperature

8    range of the thirties for thirteen days, with only his underwear to wear. Defendants were

9    responsible for the removal of Plaintiff's property, including linen and clothes, from the cell.

10   The temperature at the time, as declared by Plaintiff, was in the thirties, which is near freezing

11   temperature. This is circumstantial evidence that Defendants were subjectively aware of the

12   temperature in the cell, as the Defendants could have perceived the coldness of the cell at the

13   time Plaintiff was placed on management cell status. Accordingly, the Court recommends that

14   Defendants' argument for qualified immunity be denied.

15   **V.      Conclusion And Recommendation**

16           Based on the foregoing, it is HEREBY RECOMMENDED that Defendants' motion for

17   summary judgment, filed June 14, 2010, should be DENIED.

18           These Findings and Recommendations will be submitted to the United States District

19   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **twenty-**

20   **one (21) days** after being served with these Findings and Recommendations, the parties may file

21   written objections with the Court. The document should be captioned "Objections to Magistrate

22   Judge's Findings and Recommendations." The parties are advised that failure to file objections

23   within the specified time may waive the right to appeal the District Court's order. *Martinez v.*

24   *Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

25           IT IS SO ORDERED.

26   **Dated:   January 20, 2011**                      _____/s/ **Dennis L. Beck**_____
                                                          UNITED STATES MAGISTRATE JUDGE

27

28

                                                11